UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Farmers Home Mutual Ins., et al.,

Petitioner,

v.

AXA Corporate Solutions Reinsurance Co.,

Respondent.

Civil: 01-213 JRT/FLN

**REPORT AND RECOMMENDATION**

---

RICHARD MAHONEY, Esq., for Plaintiffs.
TIMOTHY WALDECK, Esq., for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge for a hearing on April 6, 2001, on Petitioner's Motion to Compel Respondent to Comply with the Arbitration Agreement [#1].

## I. BACKGROUND

Farmers Home Group ("Farmers") is comprised of four Minnesota insurance companies operating as a group. (See Resp't's Mem. in Opp'n to Motion to Compel Arbitration at 2 ("Resp't's Opp'n Mem.")). Farmers is a ceding company that transfers all or a portion of a portfolio of risks it underwrites to a reinsurer. (Id.). AXA Corporate Solutions Reinsurance Company ("AXA"), is a reinsurance company that is in the business of assuming all or a portion of a portfolio of risks underwritten by other insurers. (Id.). AXA provided reinsurance to Farmers under the "Third Excess Multiple Line Reinsurance Contract No. 0867-00-0014" from January 1, 1994, to January 1, 1995. (Id.). This action arises out of AXA's refusal to reimburse

FILED APR 24 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

Farmers for claims arising under the reinsurance contract and amounting to approximately $196,032.78. (See Pet'r's Mem. in Supp. of Motion to Compel Arbitration at 3 ("Pet'r's Supp. Mem.")).

On November 6, 2000, Farmers demanded that AXA submit the dispute to three arbitrators pursuant to the arbitration clause in the reinsurance contract. (See Resp't's Opp'n Mem. at 3). As per the arbitration clause, both parties appointed their arbitrators, however, both arbitrators were unable to agree on the selection of a third arbitrator ("umpire").[1] (Id.). The arbitration clause provides that:

> If the two arbitrators fail to agree in the selection of a third arbitrator within thirty days of their appointment, each of them shall name two, of whom the other shall decline one and the decision shall be made by drawing lots. All arbitrators shall be active or retired disinterested officers of insurance or reinsurance companies or Underwriters at Lloyd's, London[,] not under the control of either party to this contract.

(Resp't's Opp'n Mem., Ex. A, Art. XXI). AXA's counsel advised that the above-mentioned procedure was unacceptable and proposed that the parties utilize the umpire selection methodology of ARIAS•U.S.[2] (Id.). The parties are now at an impasse and the umpire has not been selected.

## II. CONCLUSIONS OF LAW

### A. Standard of Review

The Federal Arbitration Act, 9 U.S.C. § 1 et seq, was intended to reverse centuries of

---

[1] The third arbitrator is commonly referred to as the umpire in the reinsurance industry.

[2] ARIAS•U.S. is a non-profit entity organized principally as an educational society dedicated to promoting the integrity of the arbitration process in insurance and reinsurance disputes. It seeks to train knowledgeable and reputable professionals for service as panel members in industry arbitrations. ARIAS•U.S. publishes a directory of experienced arbitrators commonly used in the reinsurance industry.

judicial hostility to arbitration agreements by placing arbitration agreements upon the "same footing as other contracts." Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11 (1974). The Federal Arbitration Act ("FAA") accomplishes this purpose by providing that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA thus establishes a federal policy favoring arbitration, requiring Courts to "rigorously enforce agreements to arbitrate." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983); Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985); see also Keymer v. Management Recruiters Int'l, Inc., 169 F.3d 501, 504 (8th Cir.1999).

However, the FAA's pro-arbitration policy does not operate without regard to the intent of the contracting parties, for arbitration is a matter of consent, not of coercion. See Hugs and Kisses, Inc., v. Aguirre, 220 F.3d 890, 893 (8th Cir. 2000). Thus, a party cannot be forced to submit to arbitration any dispute that he has not agreed to submit. See Keymer, 169 F.3d at 504. When a contract is clear and unambiguous, Courts must give effect to the agreement's express terms and need not go beyond its plain language to determine the rights of the parties. Id. The intent of the parties is presumed to reside in the language they chose to use in the agreement. Id.

Title 9 U.S.C. § 5 provides that:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, ***such method shall be followed***; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the

arbitration shall be by a single arbitrator.

(emphasis added). In other words, this provision contemplates that the parties must follow the contractual procedure for arbitrator selection if such exists. Given these precepts, the issue before this Court is whether both parties agreed to select the umpire by drawing lots in the event that the two arbitrators are unable to agree on the selection of the umpire.

**B. Legal Analysis**

Farmers essentially argues that AXA should be compelled to comply with the agreement and should not be allowed to rewrite an existing agreement. At the other extreme, AXA contends that Farmers' umpire candidates are unqualified and that the procedure for appointing the umpire should be a matter of choice, not chance. AXA asks the Court to instruct the parties to proceed utilizing the ARIAS•U.S. umpire selection procedures or designate one of AXA's proposed candidates as the umpire in the matter pursuant to 9 U.S.C. § 5.

We will start our analysis with a reminder that the United States Supreme Court has long held that arbitration is strictly a creature of contract and rigorous enforcement requires strict adherence to the terms of the contract absent any basis for revoking the contract. Based upon this Court's review of the record and the parties' arguments at the April 6, 2001, hearing, there is no showing of fraud, duress, mistake, bias, adhesion or any other ground known to law or equity for revocation of the reinsurance contract.[3]

The method agreed upon by the parties for selecting the umpire in the event both

---

[3] AXA's unsupported allegations that Farmers' umpire candidates are unqualified and biased are without merit. The arbitration clause merely provides that the candidates shall be disinterested officers of insurance or reinsurance companies. Farmers' candidates clearly meet these criteria. <u>See</u> <u>Kentucky River Mills v. Jackson</u>, 206 F.2d 111 (6th Cir. 1953), <u>cert. denied</u> 346 U.S. 887 (Mere personal friendship with one of parties does not disqualify an arbitrator).

arbitrators are unable to agree on the selection of the umpire is explicit, unambiguous and must be given controlling effect. "If in the agreement provision be made for a method of naming or appointing an arbitrator . . . such method ***shall*** be followed." 9. U.S.C. § 5 (emphasis added). Accordingly, this Court must enforce the terms of the contract.

## III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Motion to Compel Respondent to Comply with the Arbitration Agreement [#1] be **GRANTED**.

Dated: April 23, 2001

Franklin L. Noel
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of service of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service of the objections. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.