**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

FARMERS HOME MUTUAL INSURANCE COMPANY, GOPHER STATE MUTUAL INSURANCE COMPANY, WESTERN HOME INSURANCE COMPANY, and PIONEER INSURANCE COMPANY,

Petitioners,

v.

AXA CORPORATE SOLUTIONS REINSURANCE COMPANY,

Respondent.

Civil No. 01-213 (JRT/FLN)

**ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

---

Richard P. Mahoney and Victor E. Lund, MAHONEY, DOUGHERTY AND MAHONEY, P.A., 801 Park Avenue, Minneapolis, MN 55404, for petitioners.

Timothy W. Waldeck, WALDECK & LIND, P.A., 730 TCF Tower, 121 South Eighth Street, Minneapolis, MN 55402, for respondent.

Petitioners Farmers Home Mutual Insurance, *et al.* ("Farmers") brought this action against respondent AXA Corporate Solutions Reinsurance Company ("AXA") seeking to compel arbitration. Petitioners' motion was referred to Chief United States Magistrate Judge Franklin L. Noel pursuant to 28 U.S.C. § 636(b)(1)(B). This matter is now before the Court on respondent's objections to the Report and Recommendation of the Magistrate Judge dated April 23, 2001. Magistrate Judge Noel recommended that the

FILED SEP 06 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. SEP 06 2001
DEPUTY CLERK

Court grant petitioners' motion to compel respondent to comply with the parties' arbitration agreement.

The Court has conducted a *de novo* review of respondent's objections to the Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.1(c)(2). For the reasons set forth below, the Court adopts the recommendation of the Magistrate Judge and grants petitioners' motion.

## BACKGROUND

Petitioners are insurance companies and members of Farmers Home Group, a ceding company that transfers all or a portion of a portfolio of risks it underwrites to a reinsurer. AXA is a reinsurance company that entered into an agreement to provide reinsurance to Farmers. A dispute arose between the parties when AXA refused to reimburse Farmers for claims arising under the reinsurance agreement. The reinsurance contract contained an arbitration clause, and on November 6, 2000, Farmers demanded that AXA submit the parties' dispute to a panel of three arbitrators pursuant to the arbitration clause. The parties each appointed their respective arbitrators pursuant to the agreement, but the two arbitrators were unable to agree on the third arbitrator, known as an umpire.

The relevant portion of the arbitration clause provides that:

> If the two arbitrators fail to agree in the selection of a third arbitrator within thirty days of their appointment, each of them shall name two, of whom the other shall decline one and the decision shall be made by drawing lots. All arbitrators shall be active or retired disinterested officers of insurance or reinsurance companies or Underwriters at Lloyd's, London not under the control of either party to this contract.

AXA now asserts that the procedure for choosing the umpire contained in the arbitration clause is unacceptable. Instead, it proposes that the parties select an umpire according to the methodology of ARIAS•U.S.[1] Farmers moves to compel AXA to follow the procedure set forth in the arbitration agreement.

The Magistrate Judge concluded that there was no basis for revoking the reinsurance contract containing the arbitration clause. He also found that the method for selecting the umpire set forth in the agreement was clear and unambiguous and must be given effect. The Magistrate Judge therefore recommended that petitioners' motion be granted. Respondent appears to make four objections to the Magistrate Judge's Report and Recommendation. Each will be addressed in turn below.

## ANALYSIS

### I. Findings of Fact

Respondent first objects to the R&R claiming that the Magistrate Judge did not make necessary findings of fact. However, respondent does not explain what findings of fact it deems necessary in this case. Both Rule 72(b) of the Federal Rules of Civil Procedure and Local Rule 72.1(c)(1) provide that the Magistrate Judge is to make findings of fact when appropriate or necessary. The language of those two rules makes clear that findings of fact are not required in every instance. Moreover, in this case, the Magistrate Judge sufficiently set forth the background facts that are necessary for the

[1] ARIAS·U.S. is a non-profit entity organized to promote the integrity of the arbitration process in insurance and reinsurance disputes.

resolution of the legal issue before the Court.[2] The Court therefore finds no merit in this objection.

## II. Good Faith and Fair Dealing

Respondent also objects to the Report and Recommendation, arguing that the Magistrate Judge did not incorporate a duty of good faith and fair dealing into the reinsurance contract. Respondent appears to be arguing that petitioners did not act in good faith when submitting their list of potential umpire candidates.

The arbitration agreement is analyzed pursuant to the Federal Arbitration Act ("FAA"), which provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Revocation of a contract may, of course, be premised on a lack of good faith or fair dealing by a party to the contract. Restatement (Second) of Contracts § 205 (1981) ("[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement").

In this case, the umpire candidates proposed by petitioners comply with the criteria in the arbitration agreement, which were agreed upon by both parties. Farmers has abided by the agreement and there is no evidence in the record to indicate a lack of good faith or fair dealing. AXA's displeasure with the outcome of the selection process for choosing the umpire is not sufficient to render the agreement invalid.

AXA cites to *Hooters of America, Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999), to support its argument. In *Hooters*, the court concluded that plaintiff had materially

---

[2] Notably, the Magistrate Judge explained in a footnote that AXA's allegations that Farmers' umpire candidates were unqualified and biased was without merit.

breached the arbitration agreement by establishing rules that were so unfair as to constitute bad faith on the part of plaintiff in its performance of the contract. *Id.* at 938. Unlike in *Hooters*, in which one party had unrestricted control over the panel of arbitrators, the agreement in this case contains a procedure by which each party participates equally in the selection process. *Id.* at 939. The selection of the umpire, while determined in part by chance when the two arbitrators cannot agree on a third umpire, is fair to each party. *Hooters*, therefore, is inapposite.

There is no factual basis in the record to indicate a lack of good faith or fair dealing on the part of petitioners. Petitioners have adhered to the terms of the agreement and AXA's dissatisfaction with the result is not sufficient to invalidate the agreement. Any objections to the selection process for the umpire or to the criteria that would be used to select the umpire should have been made at the time the contract was formed. The agreement is valid and there is no unfairness that would justify invalidating the parties' contract.

## III. Qualified and Disinterested Umpires

Respondent also objects to the Report and Recommendation on the grounds that candidates submitted by Farmers for the umpire position were not qualified, disinterested or experienced third parties as required by the agreement. Respondent also argues that the Magistrate Judge improperly imposed a duty on AXA to demonstrate fraud, bias or disqualification of the umpire candidates. The Court does not agree.

Each of Farmers' candidates for umpire meet the criteria in the arbitration agreement. As noted above, the agreement is valid and the criteria were acceptable to

both parties at the time the contract was entered into. While AXA now suggests alternative procedures for selecting the umpire that may potentially be superior to the procedure set forth in the agreement, absent a reason to invalidate the original agreement, the Court will not rewrite the contract. *LaSociete Generale Immobiliere v. Minneapolis Cmty. Dev. Agency*, 44 F.3d 629, 637 (8th Cir. 1994) ("[w]here, as here, two sophisticated parties negotiated a commercial contract which was executed in the absence of fraud, duress, or any other form of unconscionability, we will not rewrite the contract in order to save a contracting party from its own poor decisions"). It is not for the Court to determine at this stage of the proceedings which method or criteria are optimal for umpire selection. The FAA was enacted to provide parties with some leeway in resolving disputes so as to avoid litigation. The Act is intended to discourage judicial interference with arbitration agreements. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510-11 (1974). AXA has failed to point the Court to any evidence in the record concerning the umpire selection process that persuades the Court that interference with the parties' agreement is warranted.

## IV. Appointment of an Umpire Pursuant to FAA

Respondent also objects to the Report and Recommendation on the ground that the Magistrate Judge incorrectly determined that it could not appoint the third arbitrator in this case. However, respondent misunderstands the recommendation. The Magistrate Judge simply concluded that when the language of an arbitration clause is clear and unambiguous, it must be given effect. The Court agrees.

The FAA provides that:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by single arbitrator.

The FAA requires that if the method of naming an arbitrator is provided in the agreement, that method **shall** be followed. The FAA further provides that the court shall appoint an arbitrator or umpire upon application of either party if any party fails to avail itself of the method outlined in the agreement. AXA argues that it has "failed to avail" itself of the method provided in the agreement and is therefore entitled to have the Court appoint the third arbitrator. Respondent relies on *Hugs & Kisses, Inc. v. Aguirre*, 220 F.3d 890 (8th Cir. 2000) and *Food Handlers Local 425 v. Pluss Poultry, Inc.*, 260 F.2d 835 (8th Cir. 1958) in support of its position.

However, both of those cases are distinguishable. In *Hugs and Kisses*, one of the parties refused from the outset, to participate in the arbitration process. *Hugs & Kisses, Inc.*, 220 F.3d at 892. Hugs & Kisses proceeded to arbitrate the dispute in the absence of the other party. *Id.* The Eighth Circuit, relying on *Food Handlers Local 425*, concluded that the arbitrator exceeded his authority and the decision had to be vacated. *Id.* at 893. However, the court importantly noted that the "proper course" in that case would have been for Hugs & Kisses "to move the district court to compel arbitration," rather than

simply to proceed without the other party. *Id.* The court also explained that "arbitrators are without authority where they are not chosen as provided in the parties' arbitration agreement." *Id.* Similarly, in *Food Handlers*, the Eighth Circuit faced a situation in which one party to a dispute claimed that the dispute was not arbitrable and refused to participate in the arbitration. *Food Handlers Local 425*, 260 F.2d at 837. The petitioner continued the process, arbitrating the dispute in the absence of the other party and the Eighth Circuit affirmed the dismissal of the award. *Id.*

However, in this case we do not have a situation in which AXA has refused to participate in the arbitration. Instead, AXA abided by the terms of the arbitration clause by selecting one of the arbitrators. It only refused to continue cooperating when AXA realized that it would be dissatisfied with the choice of the umpire. This case is therefore distinguishable from *Hugs and Kisses* and *Food Handlers*.[3] Moreover, the Court does not find that AXA "failed to avail" itself of the arbitration procedure as it initially participated in selecting one of the arbitrators. To find otherwise would allow parties to avoid the clear terms of an arbitration agreement. *See, e.g., In re Salomon Inc. Shareholders' Derivative Litigation*, 68 F.3d 554, 560 (2nd Cir. 1995).

The operative language of the FAA in this case, as explained correctly by the Magistrate Judge, is: "[i]f the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method **shall be followed** . . . ." Here, AXA proceeded under the agreement and participated in the selection of the arbitration panel until it determined that it would not like the result. There is no basis for

[3] The Court also notes that another important distinction between those cases cited by respondent and this case, is that here, the procedure for selecting the umpire is clearly set forth in the parties' agreement.

invalidating the agreement and no reason that the method detailed in the parties' agreement should not be followed. *See Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (the FAA "simple requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms"). Petitioners' motion to compel respondent to comply with the arbitration agreement is therefore granted.

**ORDER**

Based on the foregoing, the submissions of the parties, and all of the files, records, and proceedings herein, the Court **OVERRULES** the objections of respondent [Docket No. 12] and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 11]. Accordingly, **IT IS HEREBY ORDERED** that petitioners' motion to compel respondent to comply with the arbitration agreement [Docket No. 1] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: Sept. 6, 2001
at Minneapolis, Minnesota.

John R. Tunheim
JOHN R. TUNHEIM
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:** September 7, 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

# Please forward this announcement to the recipient of this fax.

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500